FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 SEP 13 PM 1:21

U.S. [illegible]
N D [illegible]

| | | |
|---|---|---|
| MARION P GORDON, | } | |
| Plaintiff, | } | |
| vs. | } | CASE NO. CV 03-B-0664-S |
| CARRAWAY METHODIST HEALTH SYSTEMS d/b/a Carraway Methodist Medical Center, Inc., | } | |
| Defendant. | } | ENTERED SEP 13 2004 |

## MEMORANDUM OPINION

Currently before the court is a Motion for Summary Judgment filed by defendant Carraway Methodist Health Systems ("Carraway"). (Doc. 14.) Also before the court is defendant's Motion to Strike (doc. 19). Plaintiff seeks relief under the FMLA for interference and retaliation. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is due to be denied and defendant's Motion to Strike is due to be granted in part and denied in part.

### I.  Factual Summary

In November 2001, plaintiff was an employee of Comforce, an independent staffing vendor for Carraway, and was assigned to work at Carraway. (Doc. 15, Tab A ¶ 2.) Plaintiff began work on November 14, 2001, as a temporary employee. (Doc. 15, Tab B, Ex. 3 at 4.) Plaintiff continued to be paid by Comforce until May 2002, when she applied for and was hired by Carraway as a Hospital Information Management Analyst. (Doc. 18, Ex. 1 at 63; Doc. 15,

Tab A, Ex. 2.) Plaintiff received paychecks from Carraway as of May 27, 2002. (Doc. 15, Tab G at 11; Tab A, Ex. 2.) Prior to May 27, 2002, plaintiff received her paycheck from Comforce. (Doc. 18, Ex. 1 at 63.) She received her W-2's from Comforce for 2001 and 2002 and from Carraway for 2002. (*Id.* at 64.) Prior to May 2002, plaintiff states she received direction from Carraway employees on how to do her job, when to report to work, and what assignments she should perform. (Doc. 18, Ex. 2 ¶ 2.) She reported to supervisor employees of Carraway, and went through an orientation at Carraway. (*Id.*) Once plaintiff became an employee of Carraway on May 27, 2002, she was on Carraway's payroll and received benefits through Carraway. (Doc. 15, Tab A ¶ 4 and Ex. 2; Tab G at 11.) On August 14, 2002, plaintiff was transferred to a Registration Specialist position in Admitting for the Emergency Room. (Doc. 18, Ex. 1 at 61-63.)

Carraway employees are required to submit requests for vacation well in advance, because work schedules are generally set four weeks in advance and posted the beginning of each month. (Doc. 18, Ex. 3 at 15, 17; Ex. 4 at 15-16.) On November 11, 2002, plaintiff submitted her request for vacation from December 29, 2002, through January 5, 2003. (Doc. 15, Tab D, Ex. 3; Doc. 18, Ex. 2 ¶ 6.) Plaintiff's vacation request was approved and reflected on the December work schedule. (Doc. 18, Ex. 2 ¶ 6.) In addition, the schedule reflected that plaintiff was not scheduled to work on December 27 or 28. (*Id.*)

On December 16, 2002, plaintiff was hospitalized. (Doc. 18, Ex. 1 at 27; Ex. 2 ¶ 7; Ex. 3 at 65; Ex. 4 at 37-38.) She was scheduled to work that day, but she called and notified Carraway of her need for emergency leave due to her hospitalization. (Doc. 18, Ex. 1 at 27-30; Ex. 3 at 65-66; Ex. 4 at 37-38.) On December 19, 2002, plaintiff was sent a FMLA packet by Andrea Tubbs,

after Darlene Lowe, plaintiff's manager, notified Tubbs that plaintiff had been out more than three days. (Doc. 18, Ex. 6 at 17.) Plaintiff had fifteen days to complete the FMLA packet. (*Id.*) Plaintiff left the hospital on December 19, 2002, but was not cleared to return to work until December 27, 2002. (Doc. 15, Tab B, Ex. 3 at 7-8.) Plaintiff received a call from Lowe on December 19, informing plaintiff that she would not keep her job if she did not return a doctor's excuse. (*Id.* at 7; Doc. 18, Ex. 1 at 32.) Plaintiff delivered her return-to-work slip to Carraway on December 20, 2002. (*Id.*) The slip stated plaintiff "will return to work on 12-27-02." (Doc. 15, Tab C, Ex. 2.) At that time, Lowe allegedly informed plaintiff that Carraway was considering terminating her employment due to attendance, but plaintiff could be granted personal leave. (Doc. 18, Ex. 1 at 37-38; Ex. 2 ¶ 8.)

On December 27, 2002, Tubbs called plaintiff to remind her to complete her FMLA packet, which Tubbs ultimately never received. (Doc. 15, Tab G at 18.) Tubbs informed plaintiff that she believed plaintiff would not qualify for FMLA leave based on her hire date and the number of hours she had worked. (*Id.*) Tubbs told plaintiff she should still return the packet and have her absence covered by personal leave. (*Id.* at 18-20.)

On December 27, 2002, plaintiff was also contacted by Lowe and asked to report to work at 3:00 p.m. on December 27, 2002. (Doc. 18, Ex. 1 at 10-11.) Plaintiff was not scheduled to work that day. (Doc. 18, Ex. 2 ¶ 9.) She returned to work as asked at 3:00 p.m. and clocked in to her position as a registration specialist in the ER. (Doc. 18, Ex. 1 at 10-11, 119.) However, it is disputed whether plaintiff was actually allowed to return to work. Upon returning to work, plaintiff states she was not allowed to work; she went directly into a meeting with her supervisor (Kathy James), her manager (Lowe), and the Vice President of Human Resources (Mickey

Jones). (Doc. 15, Tab B, Ex. 3 at 3; Doc. 18, Ex. 1 at 10-11; Ex. 2 ¶ 9; Ex. 4 at 46.) A meeting with plaintiff was suggested to discuss staffing problems and the need for employees to help out. (Doc. 15, Tab D at 78-79.) Carraway wanted plaintiff to understand the situation and agree to work. (*Id.* at 83.) However, it was not normal for Jones to be at a meeting to discuss staffing or scheduling. (*Id.* at 78.) Carraway states it needed plaintiff to work on December 27 and thereafter, because it had an ongoing staffing problem caused by a lot of different situations. (Doc. 15, Tab E at 47.)

During the meeting, Carraway informed plaintiff that "since she had been absent during the Christmas holidays, [Carraway] would not be able to honor her requested vacation to begin on December 27. She would be expected to work so that others who had covered for her during the holidays could have time off." (Doc. 18, Ex. 9.) Lowe recalled Jones telling plaintiff there would be "consequences" if plaintiff did not cancel her vacation. (Doc. 18, Ex. 3 at 87-88.) Plaintiff explained her vacation plans to those present, and that she was not physically well enough to return to work. (Doc. 18, Ex. 1 at 11-14; Ex. 2 ¶ 10; Ex. 4 at 45.) She also felt it was unfair for Carraway to cancel her vacation plans that had been scheduled for over one month. (Doc. 18, Ex. 1 at 134-35.) Plaintiff felt Carraway was retaliating against her for being sick. (Doc. 18, Ex. 1 at 13, 26.) Jones recalled plaintiff becoming "really, really angry. She said [asking her to work] wasn't fair and that she would quit before she would work." (Doc. 15, Tab E at 42.)

According to defendant, plaintiff was not told during the meeting that she was being terminated for attendance, or that she would be fired if she did not work shifts during her scheduled vacation. (Doc. 15, Tab C at 37-38; Tab D at 90.) Lowe and James recall plaintiff

saying she was resigning, but she would not put her resignation in writing. (Doc. 15, Tab D at 94; Tab F at 41.) Plaintiff states she said "no, I don't want to resign" when asked if she wanted to resign. (Doc. 18, Ex. 2 ¶ 12; Ex. 1 at 13.) Plaintiff also states she was not told of any staffing shortage or that other employees needed to be off from work; she was simply told that her "vacation was being cancelled because [she] had been off work sick." (Doc. 18, Ex. 1 at 24; Ex. 2 ¶ 12.) Plaintiff recalls being asked for her employee badge and key, and being told her services were no longer needed. (Doc. 18, Ex. 1 at 15-17.) In her deposition, plaintiff admits she was not specifically told she was being fired or terminated; rather, she felt she was fired after being told her services were no longer needed, and being asked for her badge and key. (*Id.* at 16-17.)

## II.     Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met her burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. Discussion

#### A. FMLA Claims

For purposes of summary judgment only, Carraway concedes plaintiff was an eligible employee under the FMLA. However, plaintiff asserts she was legitimately covered under the FMLA. Plaintiff states she was a joint employee of Carraway and Comforce from November 14, 2001, through May 2002, when she became a Carraway employee. "When two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA." 29 C.F.R. § 825.106(a). "[J]oint employment will ordinarily be found to exist when a temporary or leasing agency supplies employees to a second employer." 29 C.F.R. § 825.106(b). Further, "employees jointly employed by two employers must be counted by both employers . . . in determining employer coverage and employee eligibility." 29 C.F.R. § 825.106(d). Plaintiff received her paycheck from Comforce prior to May 2002, and W-2's for 2001 and 2002. Plaintiff received direction from Carraway employees on how to do her job, when to report to work, and what assignments she should perform. She also reported to supervisor employees of Carraway, and went through orientation at Carraway. Plaintiff has presented sufficient evidence to show that she was controlled by both

Carraway and Comforce between November 2001 and May 2002. Therefore, the court finds a reasonable jury would find plaintiff's FMLA eligibility period began to run in November 2001.

### 1.    Interference Claim

To assert her interference claim, plaintiff must demonstrate by a preponderance of the evidence that she was entitled to the denied benefits. *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000). The Eleventh Circuit has held that an employee is entitled to two rights under the FMLA, the right to take leave and the right to return to work. *Strickland v. Water Works and Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001).

In this case, plaintiff does not contend that her right to take leave during the period in which she was sick was interfered with; rather she contends she was not allowed to return to work after her period of sick leave ended. According to plaintiff, she was called into work on December 27, 2002, the day after her FMLA leave expired in order to be terminated by Carraway. Plaintiff states she was called into work on a day in which she was not scheduled to work and was immediately taken into a meeting where she was terminated. As the meeting ended, plaintiff states her badge and key were taken from her and she was escorted from the facilities by a security guard.

Carraway cites one of plaintiff's deposition responses to show that plaintiff actually clocked in on December 27, 2002, for the job she held prior to her leave. (Doc. 18, Ex. 1 at 119.) However, plaintiff was not asked whether she actually performed any work that day. (*Id.*) Plaintiff states that although she clocked in, she was not allowed to work. (Doc. 15, Tab B, Ex. 3 at 3; Doc. 18, Ex. 2 ¶ 9; Ex. 4 at 46.) Plaintiff says she was almost immediately taken to a

meeting with James, Lowe, and Jones, and was not allowed to perform any work that day. (Doc. 18, Ex. 2 ¶ 9.) Carraway also argues that its work policies allowed plaintiff's vacation schedule to be changed at any time, and that plaintiff failed to complete the process of classifying her leave as FMLA leave because she refused to work, left for vacation, and failed to complete the required FMLA forms.

Based upon the conflicting testimony regarding whether plaintiff was allowed to perform work when she returned to work on December 27, 2002, the court finds genuine issues of material fact remain. Therefore, Carraway's motion for summary judgment on plaintiff's interference claim will be denied.

### 2. Retaliation

The Eleventh Circuit uses the burden-shifting analysis set out in *McDonnell Douglas* when evaluating retaliation claims under the FMLA. *See Smith v. BellSouth Telecommunications, Inc.*, 273 F.3d 1303, 1313 (11th Cir. 2001). The Eleventh Circuit has defined the prima facie elements of a retaliation claim as follows:

> To state a claim under the FMLA, a plaintiff must prove three elements at trial: (1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment decision; and (3) there is no causal connection between the protected activity and the adverse employment decision.

*Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001)(quoting *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000)). It is clear plaintiff took leave for medical reasons from Carraway in December 2002. Plaintiff states she was terminated during the December 27, 2002 meeting, while Carraway maintains plaintiff resigned during that

meeting. Therefore, whether plaintiff resigned or was terminated or fired is a factual issue that remains in dispute in this case. If plaintiff resigned her work, then her prima facie case fails because she will not have suffered an adverse employment action. If plaintiff was terminated or fired, then there is a question of fact as to whether plaintiff's FMLA leave is causally related to her involuntary dismissal. Because questions of fact remain, Carraway's motion for summary judgment on plaintiff's retaliation claim will be denied.

### B.     Motion to Strike

Carraway also filed a Motion to Strike two documents. The first document is plaintiff's affidavit submitted in opposition to Carraway's motion for summary judgment, or the statements of "belief" and "feeling" contained therein (doc. 18, ex. 2), and the other is a March 14, 2003, letter from Kevin Johnson, Carraway's General Counsel, to plaintiff's counsel, Heather Leonard (doc. 18, ex. 10).

#### 1.     Affidavit

The court finds plaintiff's affidavit, as a whole, is not due to be stricken from the record. The affidavit contains factual assertions throughout, and the assertions do not contradict plaintiff's prior testimony. The court does find, however, that plaintiff's statements of "belief" and "feeling" are due to be stricken from the record. Affidavits must "set forth facts, rather than opinions or conclusions." *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985). Plaintiff's affidavit contains statements of belief and feeling in paragraphs eight, eleven, and fourteen. (Doc. 18, Ex. 2 ¶¶ 8, 11, 14.) Therefore, the court finds plaintiff's affidavit statements of belief and feeling in paragraphs eight, eleven, and fourteen are due to be stricken from the record.

### 2. Letter

Carraway asserts the letter from Johnson to Leonard was written in the context of pre-suit compromise negotiations, and is therefore inadmissible and due to be stricken under Fed. R. Evid. 408. However, the court finds the letter does not contain statements of compromise negotiations; it merely contains a statement of Carraway's position in this lawsuit. Therefore, the court finds Carraway's motion to strike the letter dated March 14, 2003 is due to be denied.

### IV. Conclusion

For the reasons stated herein, the court is of the opinion that defendant's Motion for Summary Judgment is due to be denied, and defendant's Motion to Strike is due to be granted in part and denied in part. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 13th day of September, 2004.

SHARON LOVELACE BLACKBURN
United States District Judge